1  Law Offices of
   JAN JOSEPH BEJAR,
2  A Professional Law Corporation
   2727 Camino del Rio South, Suite 110
3  San Diego, CA 92108
   (619) 291-1112
4
   Jan Joseph Bejar, Esq.
5  Cal. State Bar No. 110192

6

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10 Zahra AFTAHI,                      )   Civil No.  '08 CV 0294 JM AJB
                                      )
11        Plaintiff,                  )
                                      )
   v.                                 )
12                                    )   COMPLAINT FOR REVIEW OF
   Michael Chertoff, Secretary; Emilio)   NATURALIZATION APPLICATION
13 Gonzalez, Director; Paul Pierre, District) UNDER 8 U.S.C. § 1447(b);
   Director; Christina Poulos, Service Center) ALTERNATIVELY, COMPLAINT FOR
14 Director; Michael B. Mukasey, Attorney)  RELIEF UNDER 5 U.S.C. § 702;
   General; Robert S. Mueller, III,   )   ALTERNATIVELY, COMPLAINT FOR
15 FBI Director,                      )   MANDAMUS RELIEF UNDER
                                      )   28 U.S.C. § 1361.
16                                    )
          Defendants.                 )   Alien No. A029-266-160
17                                    )

18 Plaintiff, by and through her attorney, alleges as follows:

19        **Introduction**

20 1.     In this Complaint, the Plaintiff requests that this Court assume jurisdiction over her

21 application for naturalization, hold a hearing on her application for naturalization, and make a

22 determination on her application for naturalization, pursuant to 8 U.S.C. § 1447(b).  The

23 Plaintiff's application for naturalization has been pending for more than 120 days beyond the date

24 on which the United States Citizenship and Immigration Services ("USCIS") conducted her

25 examination.  Over 34 months have passed since the Plaintiff's examination on her application

26 for naturalization on or about March 8, 2005.  Additionally, her application has been pending for

27 more than 120 days beyond the date on which the Plaintiff revoked her "waiver" of the

28 requirement that USCIS adjudicate her application within 120 days of her examination.

FILED

08 FEB 14  PM 3:02

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____  DEPUTY

1  Over eight months have passed since the Plaintiff revoked her "waiver" of the requirement that

2  USCIS adjudicate her application within 120 days of her examination, and USCIS has still failed

3  to make a final determination on her application. Thus, under 8 U.S.C. § 1447(b), the Plaintiff

4  requests that this Court make a determination on her application or remand the matter to USCIS

5  with instructions to determine the matter within 60 days, or within a reasonable, finite time.

6  Alternatively, the Plaintiff requests that the Court review the agencies' failure to adjudicate her

7  application for naturalization under the Administrative Procedures Act ("APA") at 5 U.S.C. §

8  702, and, under its authority at 5 U.S.C. § 706(1) compel the Federal Bureau of Investigation

9  ("FBI") to complete its security checks within 30 days and compel USCIS to determine the

10  matter within 30 days after the FBI's completion of the security checks. Alternatively, the

11  Plaintiff requests that the Court issue a writ of Mandamus, under 28 U.S.C. § 1361, to compel

12  the FBI to complete its security checks within 30 days and to compel USCIS to determine the

13  matter within 30 days after the FBI's completion of the security checks.

14

15  **I.     Jurisdiction**

16  2.      This Court has jurisdiction over this action under 8 U.S.C. § 1447(b). Under 8 U.S.C.

17  §1447(b), if USCIS fails to make a determination on an application for naturalization before the

18  end of the120-day period after the date on which the examination is conducted, the applicant may

19  apply to the United States District Court for the district in which the applicant resides for a

20  hearing on the matter. 8 U.S.C. § 1447(b). The initial examination triggers the 120 day statutory

21  period within which USCIS must make a determination on the application for naturalization.

22  United States v. Hovsepian, 359 F.3d 1144, 1151 (9th Cir. 2004)(en banc). Upon an application

23  under this section, the District Court has exclusive jurisdiction over the application for

24  naturalization and may either determine the matter or remand the matter with appropriate

25  instructions to USCIS to determine the matter. 8 U.S.C. § 1447(b); Hovsepian, 359 F.3d 1144,

26  1159 - 1164.

27  3.      If the applicant "waives" USCIS' statutory requirement under 8 U.S.C. §

28  1447(b), then arguably the statutory adjudication period is tolled, but the 120-day period

1  commences on the date that the applicant revokes the waiver.  See Raufi v. Chertoff, et.al., 434

2  F.Supp. 813, 815 (S.D. Cal. 2006).

3  4.    The Plaintiff underwent the examination regarding her application for naturalization

4  over thirty-four months ago, on or about March 8, 2005.  At her examination, at which Ms.

5  Aftahi appeared pro se, the Defendants' agent  induced her to sign a "waiver" of USCIS'

6  statutory requirement to adjudicate her examination, despite the facts that the Plaintiff gained

7  nothing from signing the waiver and that no statutory or regulatory provisions authorize such

8  "waivers."  Ms. Aftahi filed a complaint under 8 U.S.C. § 1447(b) on March 23, 2007.  After

9  filing her complaint, counsel for Ms. Aftahi learned that Ms. Aftahi had signed a waiver that had

10  tolled the statutory period.  Ms. Aftahi subsequently filed a Notice of Voluntary Dismissal

11  without Prejudice pursuant to Federal Rule of Civil Procedure 41(a).  On May 31, 2007, Ms.

12  Aftahi sent a revocation of her waiver to USCIS via certified mail, which USCIS received on

13  June 4, 2007.  Over 120 days have passed since the Plaintiff's revocation, and to date, she has not

14  received a final determination on her application for naturalization.  Thus, this Court has

15  jurisdiction over the matter.

16  5.    Jurisdiction is also conferred upon this Court for all of the Plaintiff's claims under 28

17  U.S.C. § 1331, as an action involving a federal question.  The Plaintiff's claims for relief all arise

18  under federal statutory law.  Finally, with regard to the Plaintiff's request for mandamus relief, 28

19  U.S.C. § 1361 provides, "[t]he district courts shall have original jurisdiction of any action in the

20  nature of Mandamus to compel an officer or employee of the United States, or any agency

21  thereof, to perform a duty owed to the plaintiff."

22

23  **II.    Venue**

24  6.    Under 8 U.S.C. § 1447(b), the District Court in the district in which the plaintiff resides

25  is the appropriate court in which to apply for a hearing on the matter.  Moreover, under 28 U.S.C.

26  § 1391(e), in a civil action in which a defendant is an officer or employee of the United States or

27  any agency thereof acting in his official capacity or under color of legal authority, the plaintiff

28  may bring such an action, except as otherwise provided by law, in any judicial district in which a

1  defendant in the action resides, a substantial part of the events or omissions giving rise to the

2  claim occurred, or where the plaintiff resides, if no real property is involved in the action.

3  7.      In this action, Ms. Aftahi, the Plaintiff, resides in the Southern District of California.  The

4  Defendants operate in the Southern District of California, and a substantial part of the events

5  giving rise to the claim occurred in the Southern District of California.  Thus, venue is proper

6  with this Court.

7

8  **III.    Plaintiff**

9  8.      The Plaintiff, Ms. Aftahi, is a lawful permanent resident of the United States who resides

10  within the jurisdiction of this Court.  On or about August 9, 2004, Ms. Aftahi applied for

11  naturalization pursuant to 8 U.S.C. §1421, et seq., and she underwent an examination under 8

12  U.S.C. §1446 on or about March 8, 2005.  At her examination, Ms. Aftahi signed a "waiver" of

13  USCIS' statutory requirement to adjudicate her application within 120 days of her examination.

14  According to Ms. Aftahi's knowledge, she has satisfied all the requirements for naturalization,

15  except that the Defendants and their agents have not yet completed the required "security

16  checks."  Since March 8, 2005, Ms. Aftahi has performed numerous inquiries into the status of

17  her application for naturalization, and the Defendants' agents consistently have responded that

18  her security checks were still pending, such that the Defendants and their agents could not make

19  a final determination on her application.  Ms. Aftahi's application for naturalization has been

20  pending for over thirty-four months since her examination on or about March 8, 2005.  Ms.

21  Aftahi's application for naturalization has been pending for over eight months since revoking her

22  waiver of USCIS' requirement to adjudicate her application within 120 days of her examination.

23  Moreover, the Defendants typically commence the requisite security checks for an applicant

24  shortly after receipt of an application for naturalization, and in this case, the Defendants received

25  Ms. Aftahi's application for naturalization on or about August 9, 2004.  Accordingly, the

26  Defendants have had over forty-one months to complete the required security checks.

27  / / /

28  / / /

4

**IV.    Defendants**

9.    Defendant Michael Chertoff is the Secretary of the Department of Homeland Security ("DHS"). Emilio Gonzalez is the Director of the United States Citizenship and Immigration Services ("USCIS"), an office within DHS. Paul Pierre is the District Director of the USCIS San Diego District. Christina Poulos is the Acting Director of the USCIS California Service Center. Michael B. Mukasey is the Attorney General of the United States. Robert Mueller, III, is the Director of the FBI, an agency within the Department of Justice. The Plaintiff is suing all the Defendants in their official capacities. Defendants are in charge of processing and adjudicating applications for naturalization pursuant to 8 U.S.C. § 1421, et seq., and/or performing the requisite "full criminal background check" for applicants for naturalization under Pub.L. No. 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448.

**V.    Statutory Framework**

**Complaint for Review of Naturalization Application**

10.    Pursuant to Section 336(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1447(b),

> "[i]f there is a failure to make a determination under section 335 before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter."

11.    The initial interview date is the "examination" that triggers the 120-day period under 8 U.S.C. § 1447(b). Hovsepian 359 F.3d at 1151. If the applicant "waives" USCIS' statutory requirement under 8 U.S.C. § 1447(b), then arguably the statutory adjudication period is tolled, but the 120-day period commences on the date that the applicant revokes the waiver. See Raufi v. Chertoff, et.al., 434 F.Supp. 813, 815 (S.D. Cal. 2006).

12.    An applicant for naturalization, in general, must demonstrate English language ability and knowledge of United States history and government, unless a physical or developmental disability or mental impairment prevents her from compliance with these requirements. 8 U.S.C.

1 § 1423(a) - (b).

2 13.     Persons who are opposed to organized government, who are opposed to the rule of law, or

3 who favor totalitarian forms of government are ineligible for naturalization, as are deserters of

4 the United States Armed Forces or aliens relieved of duty in the United States Armed Forces due

5 to alienage. 8 U.S.C. § § 1424 - 1426.

6 14.     Persons who satisfy the following requirements may be naturalized: (1) After admission

7 as a lawful permanent resident, continuous residence within the United States for at least five

8 years immediately preceding the date of filing the application, through the time of filing her

9 application, up to the time of admission to citizenship; (2) Physical presence in the United States

10 during at least half of the five years immediately preceding the date of filing the application; and

11 (3) Good moral character and attachment to the principles of the Constitution of the United

12 States during the five year period immediately preceding the application and throughout the

13 period that the application is processing. 8 U.S.C. § 1427.

14 15.     Federal law prohibits USCIS from using federal funds to complete adjudication of an

15 application for naturalization unless USCIS has received confirmation from the FBI that it has

16 completed "a full criminal background check." Pub.L. No. 105-119, Title I, Nov. 26, 1997, 111

17 Stat. 2448. A "name check" is not specifically mandated by law.

18 16.     The regulation at 8 C.F.R. § 335.2(b) defines "a definitive response that a full criminal

19 background check on an applicant has been completed" from the FBI as "(1) Confirmation from

20 the [FBI] that an applicant does not have an administrative or a criminal record; (2) Confirmation

21 from the [FBI] that an applicant has an administrative or a criminal record; or (3) Confirmation

22 from the [FBI] that two properly prepared fingerprint cards (Form FD-258) have been determined

23 unclassifiable for the purpose of conducting a criminal background check and have been

24 rejected." The regulations do not mandate that the FBI perform a "name check."

25 17.     According to the USCIS Ombudsman in its 2007 Annual Report to Congress, the name

26 checks "are not conducted by the FBI as part of ongoing investigations or from a need to learn

27 more about an individual because of any threat or risk perceived by the FBI. Instead, the name

28 checks are a fee-for-service that the FBI provides to USCIS and according to USCIS-defined

6

1   standards." See USCIS Ombudsman, "Annual Report to Congress June 2007," at 38, attached as

2   Exhibit 8.  In fact, "[t]he Ombudsman agrees with the assessment of many case workers and

3   supervisors at USCIS field offices and service centers that the FBI name check process has

4   limited value to public safety or national security, especially because in almost every case the

5   applicant is in the United States during the name check process, living or working without

6   restriction." Id. at 40.  The USCIS Ombudsman has recommended in its 2006 and 2007 Annual

7   Reports to Congress that USCIS re-examine its use of the "name check," and in its 2007 Annual

8   Report, the USCIS Ombudsman proposed three alternatives to requesting a name check for every

9   applicant. Id. at 40 - 45.  Thus, as its own report demonstrates, no statute or regulation

10  specifically requires that the FBI perform a "name check."

11  18.    Immigration and Customs Enforcement ("ICE"), a sister agency of USCIS within the

12  Department of Homeland Security, does not interpret the requirement that an applicant for relief

13  in removal proceedings before the immigration court undergo "all relevant identity, law

14  enforcement, or security investigations or examinations" to include an FBI name check.  See e.g.,

15  8 C.F.R. § § 1003.1(d)(6), 1003.47(g).  Accordingly, an FBI name check is not statutorily

16  required as part of a criminal background check.

17

18  **Complaint for Review of Failure to Complete the Name Check under the APA**

19  19.    The APA provides that "with due regard for the convenience and necessity of the parties

20  or their representatives and within a reasonable time, each agency shall proceed to conclude a

21  matter presented to it." 5 U.S.C. § 555(b).  Therefore, under the APA, government agencies have

22  a duty to act on matters before them within a reasonable time.

23  20.    Under the APA, "[a] person suffering legal wrong because of agency action, or adversely

24  affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to

25  judicial review thereof." 5 U.S.C. § 702.  An agency action may include "an agency rule, order,

26  license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

27  21.    The APA does not apply to the extent that another federal statute precludes judicial

28  review of an agency's failure to act.  5 U.S.C. § 701(a)(1).  An agency's action is reviewable

1   under the APA except where it is committed to agency discretion by law, but the APA embodies

2   a basic presumption of judicial review. 5 U.S.C. § 701(a)(2); <u>Abbott Laboratories v. Gardner</u>,

3   387 U.S. 136, 140 (1967). A plaintiff must exhaust her administrative remedies before seeking

4   judicial review of agency action under the APA. <u>See Darby v. Cisneros</u>, 509 U.S. 137 (1993).

5   22.     Under the APA, federal courts "<u>shall</u>...compel agency action unlawfully withheld or

6   unreasonably delayed...." 5 U.S.C. § 706(1) (emphasis added).

7

**8   Complaint for Mandamus Relief**

9   23.     If a government agency has failed to execute a duty owed to a plaintiff, then that plaintiff

10  may bring a Mandamus action pursuant to 28 U.S.C. § 1361. Title 28 U.S.C. § 1361 provides

11  the district courts with "...original jurisdiction of any action in the nature of Mandamus to compel

12  an officer or employee of the United States or any agency thereof to perform a duty owed to the

13  plaintiff."

14  24.     For a court to grant this remedy, (1) the plaintiff must have a clear right to the relief

15  sought, (2) the defendants must have a clear, non-discretionary duty to act, and (3) no other

16  adequate remedy is available. <u>Patel v. Reno</u>, 134 F.3d 929, 931 (9th Cir. 1998).

17  25.     The Defendants have a non-discretionary duty to recommend or deny an application for

18  naturalization and to perform the required security checks. The Southern District of California,

19  as well as several other courts within the Ninth Circuit, have held that the government has a non-

20  discretionary duty to make a decision on immigration applications within a reasonable time. <u>See</u>

21  <u>e.g.</u>, <u>He v. Chertoff</u>, No. 06-02608 (S.D. Cal. 2007) ("In contrast, a larger number of courts,

22  including those in the Ninth Circuit, have held that while the final decision on the application

23  itself may be discretionary, <u>the duty to reach a decision is not discretionary</u>." (emphasis added));

24  <u>Ibrahim v. Chertoff</u>, No. 06-2071, 2007 WL 1558521 (S.D.Cal. May 25, 2007); <u>Jiang v.</u>

25  <u>Chertoff</u>, No. 06-2816, 2008 WL 227955 (S.D.Cal. Jan 28, 2008); <u>Xin Liu v. Chertoff</u>, No.

26  06-2808, 2007 WL 2433337 (E.D. Cal. Aug. 22, 2007); <u>Lazli v. U.S. Citizenship and</u>

27  <u>Immigration Services</u>, No. 05-1680, 2007 WL 496351 (D. OR. Feb. 12, 2007); <u>Quan v. Chertoff</u>,

28  No. 07-00417, 2007 WL 2023553 (N.D. Cal. 2007); <u>Razaq v. Poulos</u>, No. 06-2461, 2007 WL

1    61884 (N.D. Cal. 2007); <u>Singh v. Still</u>, 470 F.Supp.2d 1064, 1068 - 1071 (N.D. Cal. 2007);

2    <u>Okunev v. Chertoff</u>, No. 07-00417, 2007 WL 2023553 (N.D.Cal. July 11, 2007); and

3    <u>Aboushaban v. Mueller</u>, No. 06-1280, 2006 WL 3041086 (N.D.Cal. Oct. 24, 2006)

4

5    **VI.**    **Factual Allegations**

6    26.    Ms. Aftahi is a 69-year-old native and citizen of Iran. Ms. Aftahi was admitted for lawful

7    permanent residence in the United States in 1990. <u>See</u> Exh. 1, Copy of Ms. Aftahi's Resident

8    Alien Card.

9    27.    On or about August 9, 2004, the Plaintiff filed a Form N-400, Application for

10    Naturalization, with the USCIS California Service Center in Laguna Niguel, California. <u>See</u>

11    Exh. 2, Copy of Receipt with Exception.

12    28.    Ms. Aftahi appeared as requested at her Fingerprinting and Biometrics appointment prior

13    to her interview, at which she provided the Defendants with her fingerprints and biographic

14    information necessary to conduct the requisite security checks. She also appeared as requested to

15    be fingerprinted on April 18, 2007.

16    29.    The Defendants' agents scheduled an interview with Ms. Aftahi regarding her application

17    for March 8, 2005, and the Defendants' agent interviewed Ms. Aftahi at that time.

18    30.    At the interview, the Defendants' agent informed Ms. Aftahi that USCIS had accepted

19    her request under 8 U.S.C. § 1423(b)(1) for a disability exception to the requirement that she

20    demonstrate English language ability and/or a knowledge of United States history and

21    government.

22    31.    At that time, however, the Defendants and their agents had not yet completed the

23    security checks into Ms. Aftahi's background and could not make a determination on her

24    application for naturalization. The Defendants' failure to complete the security checks was not

25    due to Ms. Aftahi's lack of cooperation, as she complied with all requirements. The Defendants

26    and their agents did not inform Ms. Aftahi of any other deficiency in her application for

27    naturalization. <u>See</u> Exh. 3, Copy of N-652 Naturalization Interview Results.

28    32.    Ms. Aftahi appeared <u>pro se</u> at her interview on March 8, 2005, and at her interview, the

1  Defendants' agent had Ms. Aftahi sign a "waiver" of the Defendants' requirement that they

2  adjudicate her application for naturalization within the 120-day statutory period.  See Exh.5,

3  Copy of Ms. Aftahi's "waiver."

4  33.     Since her interview on March 8, 2005, over two years ago, Ms. Aftahi, with the

5  assistance of her family members, has made repeated inquiries into the status of her application

6  for naturalization.  The Defendants' agents have consistently responded that the Plaintiff's

7  security checks were still pending completion and that, accordingly, the Defendants could not

8  make a determination on her application.  See Exh. 4, Copies of Inquiry Responses from the

9  Defendants indicating that Ms. Aftahi's security checks are still pending completion.

10 34.     On May 31, 2007, Ms. Aftahi revoked her "waiver" of the Defendants' requirement that it

11 adjudicate her application within 120 days.  The USCIS San Diego District Office received this

12 revocation on June 4, 2007.  See Exh. 6, Copy of Ms. Aftahi's notice of revocation of her waiver

13 and proof of receipt.

14 35.     Ms. Aftahi has satisfied all statutory requirements for naturalization.

15          a.     She has continuously resided in the United States for the five years immediately

16                  preceding her application for naturalization, through the present date.

17          b.     She was physically present in the United States for half of the five years

18                  immediately preceding her application for naturalization.

19          c.     Nothing in the record precludes a finding of Ms. Aftahi's good moral character.

20          d.     Ms. Aftahi obtained a disability exception to the requirement that she demonstrate

21                  English language ability and knowledge of United States government and history.

22          e.     The provisions at 8 U.S.C. § § 1424 - 1426 do not apply to Ms. Aftahi.

23 Thus, Ms. Aftahi is eligible for naturalization.

24 36.     To date, the Defendants have not made a final determination on Ms. Aftahi's

25 application for naturalization, and more than 120 days have passed since the revocation of her

26 waiver on June 4, 2007.

27 37.     The USCIS San Diego District Office's current average processing time for applications

28 for naturalization is approximately seven months from the date of filing.  See Exhibit 7, "District

1    Office Processing Dates for San Diego CA, Posted January 15, 2008." The Defendants have

2    taken nearly seven times its average processing time to adjudicate the Plaintiff's application for

3    naturalization, which amounts to an unreasonable delay.

4

5    **VII.    Claim for Relief**

6    38.    The Defendants' failure to make a determination on Ms. Aftahi's application for

7    naturalization within 120 days of the date that she revoked her waiver of the Defendants'

8    requirement that it adjudicate her application within 120 days of her examination allows Ms.

9    Aftahi to seek relief from this Court under 8 U.S.C. § 1447(b).

10    39.    The Defendants' unreasonable and extraordinary delay in the completion of the requisite

11    background checks and determination on Ms. Aftahi's application for naturalization allows Ms.

12    Aftahi to seek an order from this Court under 5 U.S.C. § 706(1) compelling the FBI to complete

13    its security checks within 30 days and compelling USCIS to adjudicate the application within 30

14    days after receiving confirmation of the FBI's completed security checks.

15    40.    The Defendants' unreasonable and extraordinary delay of over three years in the

16    completion of the requisite background checks and determination on Ms. Aftahi's application for

17    naturalization allows Ms. Aftahi to seek a writ of Mandamus from this Court under 28 U.S.C. §

18    1361 compelling the FBI to complete its security checks within 30 days and compelling USCIS

19    to adjudicate the application within 30 days after receiving confirmation of the FBI's completed

20    security checks.

21    41.    WHEREFORE, Ms. Aftahi prays that this Court,

22        a.    Assume jurisdiction over this cause of action;

23        b.    Conduct a hearing on Ms. Aftahi's application for naturalization, determine that

24            she is eligible for naturalization, and administer the oath of allegiance, thereby

25            swearing her in as a United States citizen;

26        c.    Alternatively, under 8 U.S.C. § 1447(b), remand Ms. Aftahi's application for

27            naturalization to the Defendants with instructions to make a final determination on

28            her application within 60 days.

11

d.     Alternatively, issue an order under the APA compelling the FBI to complete its security checks within 30 days and compelling USCIS to make a final determination on her application within 30 days of receipt of clearance from the FBI;

e.     Alternatively, issue a writ of mandamus compelling the FBI to complete its security checks within 30 days and compelling USCIS to make a final determination on her application within 30 days of receipt of clearance from the FBI;

f.     Grant Ms. Aftahi such other and further relief as this Court deems proper under the circumstances; and

g.     Grant Ms. Aftahi reasonable attorney's fees and costs.

Respectfully,

Attorney for Plaintiff,

DATED: _Feb 14, 2008_    SIGNED:

Jan Joseph Bejar, Esq.
For: JAN JOSEPH BEJAR,
A Professional Law Corporation

12

TABLE OF CONTENTS

Exhibit 1     Copy of Ms. Aftahi's Resident Alien Card..............................................................1

Exhibit 2     Copy of the Receipt Notice for Ms. Aftahi's Application for Naturalization..........2

Exhibit 3     Copy of Ms. Aftahi's Form N–652, Naturalization Interview Results....................3

Exhibit 4     Copies of the responses to inquiries into the status of Ms. Aftahi's application.....4

Exhibit 5     Copy of Ms. Aftahi's "waiver" of the Defendants' statutory requirement
to adjudicate her application within 120 days from the examination......................8

Exhibit 6     Copy of Ms. Aftahi's notice of revocation of her waiver and copy of
the certified mail receipt as proof of receipt..........................................................9

Exhibit 7     Copy of the "District Office Processing Dates for San Diego CA, posted
January 15, 2008"..................................................................................................15

Exhibit 8     Excerpt of USCIS Ombudsman's "Annual Report to Congress
June 2007,"pages 37 - 45......................................................................................16



**EXHIBIT**

1

Department of Homeland Security
U.S. Citizenship and Immigration Se...     Case 3:08-cv-00294-JM-AJB    Document 1    Filed 02/14/2008    Page 15 of 39

**I-797, Notice of Action**

## THE UNITED STATES OF AMERICA

| | |
|---|---|
| Receipt with Exception | **NOTICE DATE** August 09, 2004 |
| **CASE TYPE** N400    Application For Naturalization | **INS A#** A 029 266 160 |

| APPLICATION NUMBER | RECEIVED DATE | PRIORITY DATE | PAGE |
|---|---|---|---|
| WSC*001186587 | July 29, 2004 | July 29, 2004 | 1 of 1 |

**APPLICANT NAME AND MAILING ADDRESS**

ZAHRA AFTAHI
4321 MIAMI CT
SAN DIEGO CA 92117

**PAYMENT INFORMATION:**

| | |
|---|---|
| Single Application Fee: | $390.00 |
| Total Amount Received: | $390.00 |
| Total Balance Due: | $0.00 |

The above application has been received by our office and is in process, but has been noted with one or more of the following exception(s):

Missing Evidence(s) - your application was missing evidence(s) that you will need to provide at the time of your naturalization interview. You will be notified under separate notice of the necessary evidence(s) that you will be required to bring to your interview. Do not submit any evidence(s) by mail.

Our records indicate your personal information is as follows:

| | |
|---|---|
| Date of Birth: | August 25, 1938 |
| Address Where You Live: | 4321 MIAMI CT |
| | SAN DIEGO CA 92117 |

Please verify your personal information listed above and immediately notify our office at the address or phone number listed below if there are any changes.

You will be notified of the date and place of your interview when you have been scheduled by the local INS office. You should expect to be notified within 365 days of this notice.

**IMPORTANT NOTICE:**    All naturalization applicants who were between the ages of 14-75 at the time of filing must have their fingerprints taken at an INS Application Support Center (ASC) so they can be submitted to the Federal Bureau of Investigation for a criminal history check. If we received your application without a fingerprint card (FD-258), or your fingerprint card was received on or after December 3, 1997, you will need to go to an ASC to be fingerprinted. Do not have your fingerprints taken anywhere else. You will receive a notice that will provide you with information about when and where to go to have your fingerprints taken, and what you will need to bring with you. Please inform the office listed below immediately of any address changes.

If you have any questions or comments regarding this notice or the status of your case, please contact our office at the below address or customer service number. You will be notified separately about any other cases you may have filed.

If you have other questions about possible immigration benefits and services, filing information, or INS forms, please call the INS National Customer Service Center (NCSC) at **1-800-375-5283**. If you are hearing impaired, please call the NCSC TDD at **1-800-767-1833**.

If you have access to the Internet, you can also visit INS at **www.ins.usdoj.gov**. Here you can find valuable information about forms and filing instructions, and about general immigration services and benefits. At present, this site does not provide case status information.

INS Office Address:
US IMMIGRATION AND NATURALIZATION SERVICE
CALIFORNIA SERVICE CENTER
P.O BOX 10400
LAGUNA NIGUEL CA 92607-

INS Customer Service Number:
(800) 375-5283

APPLICANT COPY



EXHIBIT

2

WSC$001277867

Department of Homeland Security

U.S. Citizenship and Immigration Services

# N-652, Naturalization Interview Results

A#: _29266160_

On ___March 8, 2005___ , you were interviewed by USCIS officer ___ROLANDO M. GONZALES, DAO___

☐ You passed the tests of English and U.S. history and government.

☐ You passed the tests of U.S. history and government and the English language requirement was waived.

☑ USCIS has accepted your request for a Disability Exception. You are exempted from the requirement to demonstrate English language ability and/or a knowledge of U.S. history and government.

☐ You will be given another opportunity to be tested on your ability to _____ speak/_____ read/_____ write _____ English.

☐ You will be given another opportunity to be tested on your knowledge of U.S. history and government.

☐ Please follow the instructions on Form N-14.

☐ USCIS will send you a written decision about your application.

☐ You did not pass the second and final test of your _____ English ability/_____ knowledge of U.S. history and government. You will not be rescheduled for another interview for this Form N-400. USCIS will send you a written decision about your application.

    **A)** _____ **Congratulations! Your application has been recommended for approval.** At this time it appears that you have established your eligibility for naturalization. If final approval is granted, you will be notified when and where to report for the Oath Ceremony.

    **NOTE: You will become a United States citizen *after* you have taken the oath of allegiance on the day of the Oath Ceremony. You are not eligible to register to vote until *after* the Oath Ceremony.**

    **B)** _____ **A decision cannot yet be made about your application.**

  It is very important that you:

  ☑ Notify USCIS if you change your address

  ☑ Come to any scheduled interview.

  ☑ Submit all requested documents.

  ☑ Send any questions about this application in writing to the officer named above. Include your full name, Alien Registration Number (A#,) and a copy of this paper.

  ☑ Go to any Oath Ceremony that you are scheduled to attend.

  ☑ Notify USCIS as soon as possible in writing if you cannot come to any scheduled interview or Oath Ceremony. Include a copy of this paper and a copy of the scheduling notice.

**NOTE:** Please be advised that under section 336 of the Immigration and Nationality Act, you have the right to request a hearing before an immigration officer if your application is denied, or before the U.S. district court if USCIS had not made a determination on your application within 120 days of the date of your examination.

EXHIBIT

tebbler

3

3

U.S. Department of Homeland Security
Citizenship and Immigration Services
880 Front Street, Suite 1234
San Diego, CA 92101-8834



**U.S. Citizenship
and Immigration
Services**

Dear Applicant:

Security checks pertinent to your case are still pending. Unfortunately, we can take no further action on your case until these checks clear. As security checks are performed by other government agencies, their processing is beyond the control of Citizenship and Immigration Services. We will, however, monitor the status of your case on a weekly basis and immediately notify you when the security checks are completed and an appointment can be scheduled regarding your pending application(s). Please bear in mind that security checks sometimes take several months or years to clear.

If you wish to inquire about your case, please do so after ninety days. Inquiries may be submitted via e-mail at ask-cis.snd@dhs.gov, or in person by *INFOPASS* appointment, available at www.uscis.gov.

We regret this inconvenience and appreciate your patience.

www.dhs.gov
www.uscis.gov



EXHIBIT
4

4

THE UNITED STATES OF AMERICA

TO SERVE YOU MORE EFFICIENTLY we are replying to your letter with a brief note. This informal method enables a more prompt response. We trust you will agree that a faster response is more important than formality. A copy of this correspondence will be placed in your file. Should you inquire again concerning the same matter, please return the attached correspondence.

July 22, 2005                                                                A   29 266 160

**AFTAHI ZAHRA**
**4321 MIAMI COURT**
**SAN DIEGO, CA 92117**

Dear Sir or Madam,

After the events of 09/11/2001, the Immigration Service has been mandated to perform new background checks on all applicants for Naturalization.

Your case, like many others, is still awaiting a response for these additional security checks. **This procedure is not conducted by our agency; we are currently unable to give a timetable on its completion. When your case has cleared you will be notified by mail as to the next step in the process.**

Due to the fact that fingerprint responses expire after 15 months, some applicants will be required to take a new set of fingerprints AFTER the security checks have cleared. You will be notified by mail IF you are required to take new fingerprints. There is no additional charge for additional fingerprints.

If you have a change of address, please inform this office as soon as possible.

Thank you for your continued patience in this matter.

**\* \* \* IN THE FUTURE, YOU MAY INQUIRE ABOUT YOUR CASE VIA E-MAIL \* \* \***

Send your inquiry to: Ask-Cis.Snd@dhs.gov

**Please include the following information with your email inquiry:**
- ✓ Your name and date of birth
- ✓ Your Alien Registration number ("A" number)
- ✓ The type of application you have pending and the date it was filed
- ✓ Your email address
- ✓ Complete current mailing address and telephone number

Or you may call the *National Customer Service Center* at **1-800-375-5283** for your inquiry.

M-180 (Rev. 10-15-75)Y

UNITED STATES DEPARTMENT OF HOMELAND SECURITY
Citizenship and Immigration Services

EX 4

Form I-797C (Rev. 01/31/05) N

5

U.S. Citizenship and Immigration Ser...                              I-797C, Notice of Action

# THE UNITED STATES OF AMERICA

TO SERVE YOU MORE EFFICIENTLY we are replying to your letter with a brief note. This informal method enables a more prompt response. We trust you will agree that a faster response is more important than formality. A copy of this correspondence will be placed in your file. Should you inquire again concerning the same matter, please return the attached correspondence.

**July 26, 2005**                                                    **A   29 266 160**

**ZAHRA AFTAHI**
**4321 MIAMI CT.**
**SAN DIEGO, CA 92117**

Dear Sir or Madam,

After the events of 09/11/2001, the Immigration Service has been mandated to perform new background checks on all applicants for Naturalization.

Your case, like many others, is still awaiting a response for these additional security checks. **This procedure is not conducted by our agency; we are currently unable to give a timetable on its completion. When your case has cleared you will be notified by mail as to the next step in the process.**

Due to the fact that fingerprint responses expire after 15 months, some applicants will be required to take a new set of fingerprints AFTER the security checks have cleared. You will be notified by mail IF you are required to take new fingerprints. There is no additional charge for additional fingerprints.

If you have a change of address, please inform this office as soon as possible.

Thank you for your continued patience in this matter.

**\* \* \* IN THE FUTURE, YOU MAY INQUIRE ABOUT YOUR CASE VIA E-MAIL \* \* \***

Send your inquiry to: Ask-Cis.Snd@dhs.gov

**Please include the following information with your email inquiry:**
- ✓ Your name and date of birth
- ✓ Your Alien Registration number ("A" number)
- ✓ The type of application you have pending and the date it was filed
- ✓ Your email address
- ✓ Complete current mailing address and telephone number

Or you may call the *National Customer Service Center* at 1-800-375-5283 for your inquiry.

M-180 (Rev. 10-15-75) Y

UNITED STATES DEPARTMENT OF HOMELAND SECURITY
Citizenship and Immigration Services

Ex.4

6

Form I-797C (Rev. 01/31/05) N



**U.S. Department of Homeland Security**
USCIS
880 Front Street, Room 1234
San Diego, CA 92101-8834

**U.S. Citizenship
and Immigration
Services**

Thursday, January 19, 2006

ZAHRA AFTAHI
4321 MIAMI CT
SAN DIEGO CA 92117

Dear ZAHRA AFTAHI:

On 01/19/2006 you, or the designated representative shown below, contacted us about your case. Some of the key information given to us at that time was the following:

| | |
|---|---|
| **Person who contacted us:** | AFTAHI, ALEX |
| **Caller indicated they are:** | A translator |
| **Attorney Name:** | Information not available |
| **Case type:** | N400 |
| **Filing date:** | 08/09/2004 |
| **Receipt #:** | |
| **Beneficiary (if you filed for someone else):** | AFTAHI, ZAHRA |
| **Your USCIS Account Number (A-number):** | A029266160 |
| **Type of service requested:** | Case Status - Outside Processing Time |

The status of this service request is:

The processing of your case has been delayed. A check of our records establishes that your case is not yet ready for decision, as the required investigation into your background remains open.

Until the background investigation is completed, we cannot move forward on your case. These background checks are required to be completed on all applicants who apply for the immigration benefit you are seeking. We will make every effort to make a decision on this case as soon as the background checks are complete. If you do not receive a decision or other notice of action from us within 6 months of this letter, please contact us by calling our customer service number provided below.

If you have any further questions, please call the National Customer Service Center at 1-800-375-5283.

Please remember: By law, every person who is not a U.S. citizen and who is over the age of 14 must also notify the Department of Homeland Security within 10 days from when they move (persons in "A" or "G" nonimmigrant status are exempt from this requirement). If you have moved, please complete a Form AR-11 and mail it to the address shown on that form. If you do not have this form, you can download it from our website or you can call the National Customer Service Center at 1-800-375-5283 and we can order one for you. If you move, please call us with your new address information as soon as your move is complete. If you have already called us and given us this information, you do not need to call again.

U.S. Citizenship and Immigration Services

Exh 4
7



**UNITED STATES
CITIZENSHIP AND
IMMIGRATION
SERVICES**

880 Front St. Room 1234
San Diego, CA 92101

District Director

Date:       MAR 0 8 2005

Applicant's Name: _ZAHRA AFTAH_

File #: _25266160_

I understand that in order to determine my eligibility for naturalization to United States citizenship, the U.S. Citizenship and Immigration Services is authorized to verify information contained in my N-400 Application for Naturalization, my immigration file(s), that which I provided during my interview, and information received from any other source.

As a result, I hereby waive the requirement under Section 336 of the Immigration and Nationality Act, that the United States Citizenship and Immigration Services must render a determination on my N-400 Application for Naturalization within 120 days from the date of my naturalization interview/examination.

_Zaffor aftah_
Applicant's Signature

Witnessed by:  _Rolando Gonzales_
               District Adjustication Officer

Copy of waiver served on N-400 applicant: _____

**EXHIBIT
5**
p.8

Law Offices of
# Jan Joseph Bejar
A Professional Law Corporation

2727 Camino del Rio South, Suite 110
San Diego, California 92108
Tel: (619) 291-1112 • Fax: (619) 291-1102
e-mail: jbejar@immigrationlawclinic.com
www.immigrationlawclinic.com

Jan Joseph Bejar, Esq.*
Nicole A. Leon, Esq.
Susan P. Worm, Esq.
Ivy Leyva, Paralegal

*Certified Specialist - Immigration and Nationality Law
The State Bar of California Board of Legal Specialization

May 30, 2007

Paul Pierre, District Director
U.S. Citizenship & Immigration Services
880 Front Street, Rm. 1234
San Diego, CA 92101

>        RE:     **Withdrawal of INA § 336 Waiver**
>                **Zahra AFTAHI, A 29 266 160**

Dear Mr. Pierre:

This office represents Ms. Zahra Aftahi in immigration matters. A signed Form G-28 is enclosed as evidence of our representation. Ms. Aftahi attended her naturalization interview on March 8, 2005. At the interview, Ms. Aftahi signed a waiver of her right to enforce USCIS's statutory requirement to determine her application within 120 days of her examination.

Ms. Aftahi satisfied the requirements for naturalization at the time of her interview more than two years ago on March 8, 2005, but, to date, her application remains pending, presumably due to her FBI name check. Accordingly, effective immediately, Ms. Aftahi withdraws her waiver of the right to enforce USCIS's statutory obligation to determine her application for naturalization within 120 days. Ms. Aftahi's written notice of her withdrawal of the waiver is enclosed. Ms. Aftahi expects to receive a determination on her application for naturalization within 120 days. If she does not receive a determination in 120 days, then Ms. Aftahi will apply to the federal district court under INA § 336(b) for a determination.

We greatly appreciate your attention to this matter.

Sincerely yours,

Jan Joseph Bejar, Esq.
For: JAN JOSEPH BEJAR,
A Professional Law Corporation

Enclosures (3)

Cc: Megan Callan, AUSA

EXHIBIT
6

U.S. Department of Justice
Immigration and Naturalization Service

**Notice of Entry of Appearance as Attorney or Representative**

Appearances - An appearance shall be filed on this form by the attorney or representative appearing in each case. Thereafter, substitution may be permitted upon the written withdrawal of the attorney or representative of record or upon notification by a person acting in a representative capacity. When an appearance is made by a person acting in a representative capacity, his personal appearance or signature shall constitute a representation that under the provisions of this chapter he is authorized and qualified to represent. Further proof of authority to act in a representative capacity may be required. Availability of Records - During the time a case is pending, and except as otherwise provided in 8 CFR 103.2(b), a party to a proceeding or his attorney or representative shall be permitted to examine the record of proceeding in a Service office. He may, in conformity with 8 CFR 103.10, obtain copies of Service records or information therefrom and copies of documents or transcripts of evidence furnished by him. Upon request, he/she may, in addition, be loaned a copy of the testimony and exhibits contained in the record of proceeding upon giving his/her receipt for such copies and pledging that it will be surrendered upon final disposition of the case or upon demand. If extra copies of exhibits do not exist, they shall not be furnished free on loan; however, they shall be made available for copying or purchase of copies as provided in 8 CFR 103.10.

| In re: Zahra Aftahi | Date: December 21, 2006 |
| | File No. A29 266 160 |

I hereby enter my appearance as attorney for (or representative of), and at the request of the following named person(s):

Name: Zahra Aftahi    ☐ Petitioner  ☑ Applicant    ☐ Beneficiary

Address: (Apt. No.)    (Number & Street) 4321 Miami Court    (City) San Diego    (State) CA    (Zip Code) 92117

Name:    ☐ Petitioner  ☐ Applicant    ☐ Beneficiary

Address: (Apt. No.)    (Number & Street)    (City)    (State)    (Zip Code)

*Check Applicable Item(s) below:*

☑ 1. I am an attorney and a member in good standing of the bar of the Supreme Court of the United States or of the highest court of the following State, territory, insular possession, or District of Columbia
CALIFORNIA    SUPREME COURT    and am not under a court or administrative agency
                Name of Court
order suspending, enjoining, restraining, disbarring, or otherwise restricting me in practicing law.

☐ 2. I am an accredited representative of the following named religious, charitable, social service, or similar organization established in the United States and which is so recognized by the Board:

☐ 3. I am associated with
the attorney of record previously filed a notice of appearance in this case and my appearance is at his request. *(If you check this item, also check item 1 or 2 whichever is appropriate.)*

☐ 4. Others (Explain Fully.)

SIGNATURE

COMPLETE ADDRESS
Law Offices of Jan Joseph Bejar, A P.L.C.
2727 Camino del Rio South, Suite 110
San Diego CA 92108

NAME (Type or Print)
Jan Joseph Bejar, Esq.

TELEPHONE NUMBER
(619) 291-1112

PURSUANT TO THE PRIVACY ACT OF 1974, I HEREBY CONSENT TO THE DISCLOSURE TO THE FOLLOWING NAMED ATTORNEY OR REPRESENTATIVE OF ANY RECORD PERTAINING TO ME WHICH APPEARS IN ANY IMMIGRATION AND NATURALIZATION SERVICE SYSTEM OF RECORDS:
Jan Joseph Bejar, Esq. / Nicole A. Leon, Esq. /    Susan P. Worm, Esq.

(Name of Attorney or Representative)

THE ABOVE CONSENT TO DISCLOSURE IS IN CONNECTION WITH THE FOLLOWING MATTER:

| Name of Person Consenting Zahra Aftahi | Signature of Person Consenting  Zahra Aftahi | Date 12/21/06 |

(NOTE: Execution of this box is required under the Privacy Act of 1974 where the person being represented is a citizen of the United States or an alien lawfully admitted for permanent residence.)

This form may not be used to request records under the Freedom of Information Act or the Privacy Act. The manner of requesting such records is contained in 8CFR 103.10 and 103.20 Et.SEQ.

Form G-28 (09/26/00)Y

Exh. b, p. 10

May 30, 2007

Paul Pierre, District Director
U.S. Citizenship & Immigration Services
880 Front Street, Rm. 1234
San Diego, CA 92101

      Re:    Withdrawal of my waiver
               A 029 266 160

Dear Director Pierre:

My name is Zahra Aftahi. On March 8, 2005, I signed a waiver of the United States Citizenship and Immigration Service's requirement to make a decision on my Form N-400, Application for Naturalization within 120 days.

I now withdraw this waiver. Please adjudicate my application within 120 days, or I will enforce this requirement in federal court. Thank you for your attention to this matter and for the adjudication of my application.

Sincerely,

Zahra Aftahi

Exh. 6, p. 11



UNITED STATES
CITIZENSHIP AND
IMMIGRATION
SERVICES

880 Front St. Room 1234
San Diego, CA 92101

District Director

Date: MAR 0 8 2005

Applicant's Name: _ZAHRA AFTAH_

File #: _252606160_

I understand that in order to determine my eligibility for naturalization to United States citizenship, the U.S. Citizenship and Immigration Services is authorized to verify information contained in my N-400 Application for Naturalization, my immigration file(s), that which I provided during my interview, and information received from any other source.

As a result, I hereby waive the requirement under Section 336 of the Immigration and Nationality Act, that the United States Citizenship and Immigration Services must render a determination on my N-400 Application for Naturalization within 120 days from the date of my naturalization interview/examination.

_Zaffar aftar_
Applicant's Signature

Witnessed by: _Rolando Gonzales_
District Adjustication Officer

Copy of waiver served on N-400 applicant: _____

Exh. 6, p12

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

AFTAHI, Zahra L    USE

| | | |
|---|---|---|
| Postage | $ .58 | 5-31-07 |
| Certified Fee | 2.15 | |
| Return Receipt Fee (Endorsement Required) | 2.65 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | Withdrawal |
| Total Postage & Fees | $5.38 | |

Sent To  Paul Pierre, U.S.C.I.S.
Street, Apt. No.; or PO Box No.  880 Front St., Rm 1234
City, State, ZIP+4  San Diego, CA 92104

7007 0710 0004 4363 3089

PS Form 3800, August 2006    See Reverse for Instructions

---

AFTAHI, Zahra

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Paul Pierre, Dist. Director
U.S.C.I.S.
880 Front St., Rm.1234
San Diego, CA 92101

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _John Hendren_   ☐ Agent   ☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery
John Hendra    JUN 4 2007

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered    ☑ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7007 0710 0004 4363 3089    Exh. b, p.13

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

 **UNITED STATES POSTAL SERVICE** ®

Home | Help | Sign In

Track & Confirm          FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: **7007 0710 0004 4363 3089**
Status: **Delivered**

Your item was delivered at 7:16 am on June 04, 2007 in SAN DIEGO, CA 92101. A proof of delivery record may be available through your local Post Office for a fee.

Additional information for this item is stored in files offline.

( Restore Offline Details > ) (?)    ( Return to USPS.com Home > )

---

**Track & Confirm**

Enter Label/Receipt Number.

_____

( Go > )

---

Site Map    Contact Us    Forms    Gov't Services    Jobs    Privacy Policy    Terms of Use    National & Premier Accounts

Copyright© 1999-2007 USPS. All Rights Reserved.    No FEAR Act EEO Data    FOIA

Exh. 6, p. 14



Home   Contact Us   Site Map   FAQ

Search

Advanced Search

Services & Benefits    Immigration Forms    Laws & Regulations    About USCIS    Education & Resource    Press Room

[Print This Page]    [Back]

# U.S. Citizenship and Immigration Services
## San Diego CA Processing Dates
## Posted January 15, 2008

The processing times shown below are a tool for our customers to gauge our current processing times. When applications and petitions are completed within our target timeframes, that goal will be shown in the data display.

The processing times shown below are for applications that have just been completed. If you have just filed your application, these timeframes may not reflect how long your application will take to be completed. We encourage you to check this page periodically before inquiring about your case. The processing times are updated monthly.

USCIS has received a significant increase in the number of applications filed. In July and August, nearly 2.5 million applications and petitions of all types were received. This compares to 1.2 million applications and petitions received in the same time period last year. This fiscal year, we received 1.4 million applications for naturalization; nearly double the volume we received the year before. The agency is working to improve processes and focus increased resources, including hiring approximately 1,500 new employees, to address this workload.

As a result, average processing times for certain application types may be longer. In particular, naturalization applications filed after June 1, 2007 may take approximately 16-18 months to process.

We offer a variety of services after you file.  For example, for most kinds of cases you can <u>check the status of your case online</u>.

For more information about when and how to contact us, whether your case is outside our processing time or if there are other issues, please see our customer guide –

<u>Case Services - How do I... know what kind of services are available to me after I file my application or petition?</u>

District Office Processing Dates for **San Diego CA** Posted January 15, 2008

| Form | Form Name | Processing Timeframe: |
|------|-----------|----------------------|
| I-131 | Application for Travel Documents | October 17, 2007 |
| I-485 | Application to Register Permanent Residence or Adjust Status | July 19, 2007 |
| I-600 | Petition to Classify Orphan as an Immediate Relative | September 08, 2007 |
| I-600A | Application for Advance Processing of Orphan Petition | September 08, 2007 |
| I-765 | Application for Employment Authorization | October 30, 2007 |
| N-400 | Application for Naturalization | June 19, 2007 |
| N-600 | Application for Certification of Citizenship | August 08, 2007 |

**EXHIBIT**

**7**

P15

were approved.  This process would ensure that USCIS does not accept more applications than the number of visas available.

Another issue with priority dates and workloads is connected to the new fee rule.  The Ombudsman anticipates that when the new fee rule goes into effect in July, delays in adjudication will significantly impact the agency if it does not track visa information, including visa classifications, priority dates, and country of chargeability.  Without tallying cases receipted by visa category, USCIS inevitably will accept ineligible applications and more applications than it can process in the given timeframe.  The agency will not collect fees for interim benefits issued for new green card applicants, as the new fee rule requires only one payment for both.  In addition, there may be large numbers of retrogressed cases and, eventually, multiple issuances of interim benefits.

As described in the Ombudsman's 2006 Annual Report (at pp. 13-16), the Ombudsman continues to be concerned about USCIS' data integrity and failure to meet its obligation to maintain an accurate count of pending employment- and family-based preference applications.  Although the focus is on employment-based visa applications, similar concerns exist for family-based preference cases.  The continued collaboration of these agencies supports the Ombudsman's vision of cooperation to provide benefits in a timely and efficient manner.

### F.    Name Checks and Other Security Checks

FBI name checks, one of several security screening tools used by USCIS, continue to significantly delay adjudication of immigration benefits for many customers, hinder backlog reductions efforts, and may not achieve their intended national security objectives.  FBI name checks may be the single biggest obstacle to the timely and efficient delivery of immigration benefits.  The problem of long-pending FBI name check cases <u>worsened</u> during the reporting period.

#### 1.    Background

As of May 2007, USCIS reported a staggering 329,160 FBI name check cases pending, with approximately 64 percent (211,341) of those cases pending more than 90 days and approximately 32 percent (106,738) pending more than one year.[40]  While the percentages of long-pending cases compared to last year are similar, the absolute numbers have increased.  There are now 93,358 more cases pending the name check than last year.  Perhaps most disturbing, there are 31,144 FBI name check cases pending more than 33 months as compared to 21,570 last year – over a 44 percent increase in the number of cases pending more than 33 months.[41]

---

[40] *See* USCIS FBI Pending Name Check Aging Report (May 4, 2007).  It is important to note that USCIS does not include within its backlog cases pending due to FBI name checks.  There are 155,592 FBI name check cases pending more than six months that otherwise may be part of USCIS' backlog.  *See* section III.B for a discussion of USCIS backlogs.

[41] *See id.*

EXHIBIT

8    p-16

*Citizenship and Immigration Services Ombudsman*                          **Annual Report to Congress June 2007**

Figure 10: Pending FBI Name Checks

| Age of Pending Response | Total Count (May 4, 2007) | Total Count (May 17, 2006) |
|---|---|---|
| < 3 months | 117,819 | 82,636 |
| 3 - 6 months | 55,749 | 33,450 |
| 6 - 9 months | 28,029 | 20,047 |
| 9 - 12 months | 20,825 | 16,845 |
| 12 - 15 months | 14,133 | 15,064 |
| 15 - 18 months | 13,931 | 10,636 |
| 18 - 21 months | 11,035 | 8,144 |
| 21 - 24 months | 12,398 | 8,325 |
| 24 - 27 months | 11,765 | 9,754 |
| 27 - 30 months | 6,600 | 4,435 |
| 30 - 33 months | 5,732 | 4,896 |
| > 33 months | 31,144 | 21,570 |
| **Total Pending** | **329,160** | **235,802** |

During the reporting period, processing delays due to FBI name checks were an issue in approximately 25 percent of all written case problems received by the Ombudsman. Resolving the FBI name check issue is included in the Ombudsman's top five priorities posted on the office website.[42] Unlike FBI name checks, other types of background and security checks – *e.g.*, fingerprint checks, the Interagency Border Inspection Systems name checks (IBIS), and the Automated Biometric Identification System (IDENT) checks – return results within a few days, if not a few minutes. These law enforcement and watch list checks do not significantly prolong USCIS processing times or contribute to the USCIS backlog.

As described in the Ombudsman's 2006 Annual Report (at p. 24), the FBI provides information to USCIS regarding anyone who is the principal subject of an investigation or is a person referenced in a file. USCIS adjudicators and the Fraud Detection and National Security (FDNS) unit use this information to determine if applicants are ineligible for benefits. The FBI provides the name check results at USCIS' request. Name checks are not conducted by the FBI as part of ongoing investigations or from a need to learn more about an individual because of any threat or risk perceived by the FBI. Instead, the name checks are a fee-for-service that the FBI provides to USCIS and according to USCIS-defined standards.

Once USCIS forwards records to the FBI for name checks, the process and the turnaround time for the checks are outside of USCIS' control. Completion of the name check process may take considerable time because manual reviews of FBI files are sometimes required. This review may include FBI reporting on fragments of names of people who are not necessarily central or directly related to an investigation or law enforcement matter. In discussions with the

---

[42] *See* section VI.F.

Exh. 8
p. 17

Ombudsman, the FBI has stated that it lacks the resources to perform the function in a timely manner.

### 2.     Impact of Long-Pending FBI Name Checks on USCIS Customers

The delay caused by the FBI name check has substantial consequences to applicants and their families, as well as to our country and the economy. Examples of how legitimate applicants suffer include:

- Loss of employment and employment opportunities where the position requires green card status or U.S. citizenship;

- Possible termination of employment due to the inability to comply with required Form I-9 employment verification procedures where USCIS delays interim EAD issuance;

- Difficulties obtaining drivers' licenses;

- Inability to qualify for certain federal grants and funds;

- Limitations on the ability to purchase property;

- Difficulties obtaining credit and student loans; and

- Disqualification from in-state tuition.

---

*CASE PROBLEM*

*The applicant's green card application has been pending since early 2005 due to the FBI name check. The applicant is a valued researcher at a U.S. pharmaceutical company.*

---

*CASE PROBLEM*

*The applicant's green card application has been pending with USCIS for approximately four years due to the FBI name check. The applicant is a researcher at a U.S. university and, because of the adjudication delay, the university and the individual have been disadvantaged in seeking grant proposals and funding. Specifically, the individual reports that he is currently working on federal research projects. The applicant's inability to advance critical work for the project is a serious impediment to the university, its competitiveness, and the applicant's professional advancement.*

---

Exh.8
p.18

---

*CASE PROBLEM*

*In fall 2003, an applicant filed a green card application, which remained pending due to FBI name checks until spring 2007. During the course of the adjudication, the applicant was fingerprinted and applied for interim benefits several times. Although the applicant applied for most of the interim benefits in a timely manner, the filing of the last EAD was not timely, and the applicant had to end his employment. In correspondence to the Ombudsman in the winter of 2007, the applicant related that he is a cancer patient who no longer has income necessary to pay for treatments.*

---

In February 2007, USCIS made public the criteria for expedited treatment of FBI name checks. While this change should help with specific cases, the *status quo* for FBI name check completion is unacceptable from the standpoint of national security and immigration benefits processing.

### 3.    Value of the FBI Name Checks

The challenge for USCIS (and perhaps the challenge for DHS and the entire federal government) is to evaluate the value of maintaining the current FBI name check process relative to considerations of threat, vulnerability, and consequence. The Ombudsman agrees with the assessment of many case workers and supervisors at USCIS field offices and service centers that the FBI name check process has limited value to public safety or national security, especially because in almost every case the applicant is in the United States during the name check process, living or working without restriction.

The Ombudsman recommended in the 2006 Annual Report (at p. 25) that the FBI name check process be re-examined. Delays in the name check process actually prolong an individual's presence in the United States while the check is pending. In this sense, the current USCIS name check policy may increase the risk to national security by extending the time a potential criminal or terrorist remains in the country.

In its 2006 Annual Report Response (at p. 10), USCIS stated:

> Although these security checks may require a more lengthy processing time, USCIS believes that performing them is essential to identifying national security and public safety concerns that would not have been uncovered by other means . . . in, a few cases, the information obtained from the FBI through this process has reflected very significant issues and risks. FBI name checks disclose information to USCIS that is otherwise not available. Information contained in 39 [percent] of the FBI positive responses (letterhead memoranda) received in FY 06 was not contained in IBIS/TECS, USCIS' primary background check tool. . ..
> [A]lthough a heavy price is paid in inquiries, mandamus actions, and other forms of litigation, USCIS is committed to effective

Exh-8
P.19

background checks, and thus is committed to the FBI name check. In fact, under the new fee rule currently under review, USCIS proposes to dedicate more funds to the FBI name check process as the FBI has indicated the fees they charge for these checks will increase and additional staff will be added to the process. This should help to speed up the name check process and reduce the backlog significantly.

Use of the 39 percent positive response rate as referenced by USCIS to justify continuing this program may exaggerate the value of the FBI name check. It is unclear how many of the FBI name check "responses" also were revealed by one or more of the other security checks conducted for the applications. To date, the Ombudsman has been unable to ascertain from USCIS the total number of actual problem cases that the agency discovered exclusively as a result of the FBI name check. The Ombudsman understands that most, if not all, of the problem cases which would result in an eventual denial of benefits also can be revealed by the other more efficient, automated criminal and security checks that USCIS initiates.

---

*COMMENTS FROM OMBUDSMAN'S TELECONFERENCE*

*One caller mentioned that USCIS does not schedule applicants for interviews because security clearances are not yet completed. He suggested that USCIS needs to look at the cost-benefit of doing these clearances. The caller stated he is in the military and has a top secret clearance.*

*Another caller suggested that information could be sent every "X" number of months to the applicant or attorney that the application still is held up for pending name checks, which would avert the many update requests.*

---

### 4.    Possible Solutions to the FBI Name Check Delays

During this and previous reporting periods, the Ombudsman had numerous meetings with USCIS leadership on FBI name checks and discussed a number of solutions to the name check logjam.

### a.    Pre-Application Security Checks

A possible solution to the name check problem is pre-application security checks. USCIS has not chosen to implement such a process, which would dramatically impact the agency's revenue stream for a short period of time. Simultaneously, USCIS is failing to make basic changes to its processing methodology to reduce fraud and ineligible applicants. Instead, USCIS continues to substantially fund a process with questionable value. USCIS maintains that the name check process is of value, but it remains unclear whether the process has added any additional value over the security processes already in place.

Exh-8
p. 20

**Figure 11:  Ombudsman's Suggested Pre-Application Security Check Process**



1.  May be performed in the United States or abroad.
2.  Can include individuals applying for nonimmigrant visas or changes of status, individuals applying for immigrant status (adjustment or consular process), refugees, and naturalization applicants.
3.  DHS/USCIS will collect and share data through an integrated case (person-based) management system.  A component of this system will be an immigration case management system.

Exh. 8
p. 21

Figure 11 outlines the security screening steps to clear an applicant prior to interview, where necessary, and for adjudication of the immigration benefits application. The applicant/petitioner would register intent and pay a fee to cover the costs of the process. Pre-application is more than a pre-screening that determines *prima facie* eligibility. It moves the case to an adjudicating officer who reviews the file and interviews the applicant, if necessary. Since all fingerprints, biometrics, security clearances, necessary documents, medical evaluation, financial support, and visa availability are cleared, the applicant can be processed to conclusion immediately after interview. A Clearance Report is documentary proof that the applicant successfully completed the pre-application process. This process would place biometrics capture and security screening in the hands of appropriate law enforcement/contract employees, trained in the pre-screening process, and the determination of eligibility for benefits in the hands of USCIS officers trained in immigration law.

The agency also should review the DHS resources available to assist in exploring options to solve the backlogged FBI name check process. A number of DHS law enforcement entities perform security checks similar to those performed by USCIS.

### b.    USCIS Background Check Service IT System for Tracking FBI Name Check Cases

USCIS' 2006 Annual Report Response (at p. 10) indicates that the agency's planned Background Check Service (BCS), a new IT system that will track the status of background and security checks for pending cases, was to be implemented in late April with deployment beginning in May 2007. As of this writing, the BCS is not yet deployed. Currently, USCIS has limited capability to produce reports detailing the status of long-pending FBI name check cases. In addition, USCIS systems do not automatically indicate when a delayed name check is complete and the case can be adjudicated. Often, this leads to a situation where the validity of other checks expire before USCIS reviews the case. Those other checks then need to be reinitiated, adding financial and time costs for applicants and USCIS. The Ombudsman fully supports the expeditious rollout of the BCS system.

### c.    A Risk-Based Approach to FBI Name Checks

Name checks do not differentiate whether the individual has been in the United States for many years or a few days, is from and/or has traveled frequently to a country designated as a State Sponsor of Terrorism, or is a member of the U.S. military. Many individuals subject to lengthy name checks are either already green card holders or have been issued Employment Authorization Documents (EADs). These documents allow them to receive Social Security cards and state drivers' licenses. Most green card applicants are also eligible to receive advance parole enabling them to travel outside the United States and return as long as their cases are pending, which can be for many years under the current process.

Exh-8
p. 22

> **CASE PROBLEM**
>
> In early 2006, the applicant applied for naturalization. USCIS informed the applicant that the application is pending due to the FBI name check. The applicant currently is a contract employee for a federal agency and was security screened prior to beginning that employment.

> **CASE PROBLEM**
>
> The applicant's green card application was filed in early 2004. The application remains pending due to the FBI name check. The applicant previously served as a security officer at a U.S. embassy and was subject to rigorous security screening for the position.

In November 2006, Secretary Chertoff discussed a risk-based approach to homeland security threats, vulnerabilities, and consequences:

> [T]he core principle that animates what we do at DHS . . . is risk management. It is a recognition of the fact that management of risk is not elimination of risk. There is no elimination of risk in life, and anybody who promises every single person protection against every threat at every moment in every place in the country is making a false promise . . .. What we do have to do is identify and prioritize risks -- understanding the threat, the vulnerability and the consequence. And then we have to apply our resources in a cost-effective manner, using discipline and common sense in order to minimize the risk without imposing undue cost on our communities and our families.[43]

Despite Secretary Chertoff's continuing emphasis on risk management, USCIS performs FBI name checks without the benefit of risk management modeling. In recent visits to USCIS field offices, a number of leaders have questioned the usefulness of the FBI name checks citing some of the same concerns discussed here. The process is not working and consideration should be given to re-engineering it to include a risk-based approach to immigration screening and national security. The U.S. Government Accountability Office recently noted in a report that "[w]hile the Secretary of DHS has expressed a commitment to risk management, DHS has not

---

[43] DHS Secretary Michael Chertoff, Prepared Remarks at the 2006 Grants & Training National Conference, Washington, D.C. (Nov. 28, 2006); http://www.dhs.gov/xnews/speeches/sp_1164738645429.shtm (last visited June 3, 2007).

Exh.8 p.23

performed comprehensive risk assessments in . . . immigration and customs systems to guide resource allocation decisions."[44]

Every effort should be undertaken to identify and remove persons who pose threats to the United States, which would include rescinding immigration benefits after USCIS has granted them. It would be irresponsible for law enforcement entities to stop their investigation of a potential crime merely because the person who is the subject of their investigation has obtained a green card or U.S. citizenship. Similarly, it would be illogical to think that delaying issuance of a green card or U.S. citizenship will prevent a criminal from committing a crime. Considering the protection the FBI name check provides, the cost of government resources used, and mental and actual hardships to applicants and their families, USCIS should reassess the continuation of its policy to require FBI name checks in their current form.

---

*RECOMMENDATION AR 2007 -- 06*

*In addition to the Ombudsman's recommendation in the 2006 Annual Report, AR 2006 –04, the Ombudsman recommends that USCIS: (1) evaluate the value of the name check in its current format and establish a risk-based approach to screening for national security concerns; (2) work with the FBI to provide the necessary resources to perform name checks in a timely manner; and (3) provide greater transparency to customers by publishing monthly the number of long-pending FBI name check cases.*

---

### G.    Interim Benefits

The Ombudsman strongly supports efforts by USCIS to eliminate the need for interim benefits in favor of timely, efficient, and secure adjudication of the ultimate immigration benefit.

#### 1.    Background

Generally, USCIS issues interim benefits – EADs and advance parole documents (international travel documents) – to individuals who have green card applications pending with the agency for over 90 days.[45] The Ombudsman is encouraged by constructive dialogue with USCIS during the reporting period that addresses funding and security issues related to the processing of interim benefits.

On May 30, 2007, USCIS established new filing fees for immigration benefits.[46] Under the new fee schedule, USCIS will charge a single fee for green card applications to include recovery of the processing costs for interim benefits. The Ombudsman supports this approach to

---

[44] U.S. Government Accountability Office Report "Homeland Security: Management and Programmatic Challenges Facing the Department of Homeland Security," GAO-07-398T at 2 (Feb. 2007); http://www.gao.gov/new.items/d07398t.pdf (last visited June 6, 2007).

[45] *See* 8 C.F.R. § 274a.13(d).

[46] *See* "Adjustment of the Immigration and Naturalization Benefit Application and Petition Fee Schedule," 72 Fed. Reg. 29,851 (May 30, 2007); *see also* section III.H.1.

Exh.8 p.24

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 147662    — BH
* * C O P Y * *
February 14. 2008
14:56:18

**Civ Fil Non—Pris**
USAO #.: 08CV0294 CIVIL FILING
Judge..: JEFFREY T MILLER
Amount.:                    $350.00 MO
Check#.: 57415848259

**Total—> $350.00**

FROM: AFTAHI V. CHERTOFF ET AL
         CIVIL FILING

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Zahra AFTAHI

**DEFENDANTS**

Michael Chertoff, Emilio Gonzalez, Paul Pierre, Christina Poulos, Michael D. Massey, and Robert Mueller, III

(b) County of Residence of First Listed Plaintiff   **San Diego**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Law Offices of Jan Joseph Bejar, APLC, 2727 Camino del Rio South, Ste 110, San Diego, CA 92108, 619-291-1112

Attorney's (If Known)

United States Attorney's Office, 880 Front St, Rm 6293 San Diego CA 92101

'08 CV 0294 JM AJB

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☒ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                      and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | ☐ 730 Labor/Mgmt. Reporting | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Security Act | 26 USC 7609 | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | | | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | **PRISONER PETITIONS** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 510 Motions to Vacate | | Under Equal Access |
| | Employment | Sentence | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | **Habeas Corpus:** | | ☐ 950 Constitutionality of |
| | Other | ☐ 530 General | | State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 535 Death Penalty | | |
| | | ☐ 540 Mandamus & Other | | |
| | | ☐ 550 Civil Rights | | |
| | | ☐ 555 Prison Condition | | |

Torts: PERSONAL INJURY ☐ 362 Personal Injury - Med. Malpractice ☐ 365 Personal Injury - Product Liability ☐ 368 Asbestos Personal Injury Product Liability PERSONAL PROPERTY ☐ 370 Other Fraud ☐ 371 Truth in Lending ☐ 380 Other Personal Property Damage ☐ 385 Property Damage Product Liability

## V. ORIGIN  (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
8 U.S.C. s. 1447(b); alternatively, 5 U.S.C. s. 706(1); alternatively, 28 U.S.C. s. 1361

Brief description of cause:
Plaintiff's seeks relief on her application for naturalization, which has pending over 120 days since examination.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions)    JUDGE _____    DOCKET NUMBER _____

DATE  2/14/08

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #  476662    AMOUNT  $350    2/14/08 BH    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____